UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION

BRIAN SELL,

    Plaintiff,

vs.                                                      Case No._____

FLORIDA DEPARTMENT OF HEALTH,
OKEECHOBEE COUNTY HEALTH DEPARTMENT,

    Defendant.

_____/

## COMPLAINT

Plaintiff, BRIAN SELL, sues Defendant FLORIDA DEPARTMENT OF HEALTH, OKEECHOBEE COUNTY HEALTH DEPARTMENT, and states as follows:

## JURISDICTION

Jurisdiction in this Court is proper under 28 U.S.C. §1331 as this action arises under the Americans with Disabilities Act, 42 U.S.C. §12101, the Family and Medical Leave Act, 29 U.S.C. §2601, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e.

## VENUE

Venue is proper in this Court as the Plaintiff resides within the Southern District of Florida and Defendant is a government agency located within the District.

## CONDITIONS PRECEDENT

All conditions precedent to this suit have been met.  Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission, which was dual filed with the Florida Commission on Human Relations.  Plaintiff received a Right to Sue from the Department of Justice dated July 16, 2019 and filed this suit within 90 days of receipt.

## PARTIES

1. Plaintiff, BRIAN SELL, is a citizen of the State of Florida, residing in Okeechobee County.

2. Defendant, FLORIDA DEPARTMENT OF HEALTH, OKEECHOBEE COUNTY HEALTH DEPARTMENT, is an executive branch agency, established by Fl. Stat. §20.43, having its principle place of business in Okeechobee, Florida.

## FACTUAL ALLEGATIONS

3. Plaintiff served in the U.S. Army from May 25, 1988 to May 24, 1992, separating with an honorable discharge.

4. Plaintiff is an Airborne Ranger who fought in Operation Just Cause in Panama and Operations Desert Shield and Desert Storm in Iraq.

5. The United States Department of Veterans Affairs has identified Plaintiff as 80% disabled.

6. Plaintiff was employed by Defendant as a Government Operations Consultant I from October 28, 2011 to May 8, 2015.

7. On or about May 8, 2015, Plaintiff was promoted to Government Operations Consultant II.

8. On or about September 23, 2016, Plaintiff was promoted to the position of Operations & Management Consultant Manager and remained in that position until his termination.

9. Plaintiff's overall performance rating increased with every evaluation.

10. While employed by the Defendant, Plaintiff promoted, wrote grants, facilitated meetings and training for the Okeechobee Medical Reserve Corp.

11. During his employment, Plaintiff worked on several county projects to develop an exercise to practice local disaster response plans while gathering toys for tots.

12. During his employment, Plaintiff coordinated with the Treasure Coast Food Bank to establish a Mobile Pantry Distribution which provided food to those in need.

13. During his employment, Plaintiff facilitated the Fresh Access Bucks to increase access to healthy, local, fresh produce for Supplement Nutrition Assistance Program recipients.

14. During his employment, Plaintiff obtained funding for trauma Stop-the-Bleed kit to be placed in each of the Okeechobee County School District's 555 classrooms. In the event of an active shooter, Plaintiff developed training to instruct teacher's on how to use the kits.

15. During his employment, Plaintiff worked on a joint project with the Okeechobee County Fire Rescue to develop an "Ambubus" to assist in an emergency involving transporting multiple non-ambulatory people at one time. The grant to fund the project was over $100,000.

16. While employed by the Defendant, Plaintiff was chairman of both the Community Health Advisory Team (CHAT) and the Retired and Senior Volunteer Program (RSVP) of Okeechobee County.

17. Part of Plaintiff's job duties involved activation during a disaster to emergency duty where an employee may be required to deploy for up to 14 consecutive calendar days either in or out-of-state.

18. As an Emergency Duty Group 1 responder, Plaintiff generally deployed in the case of emergencies and was not required to volunteer to do so.

19. However, responders were never to self-deploy but were required to receive deployment authorization from the Division of Emergency Management. Deployment authorization could come in the form of mission assignments, deployment orders and travel authorities citing a specific purpose. Those orders are issued by the Department of Health-Bureau of Preparedness and Response ("DOH-BPR").

20. In October 2018, Plaintiff was never issued an official order to deploy by DOH-BPR.

21. Individuals who deploy without proper authorization are turned away from the incident site. Public safety personnel tasked with controlling access to incident areas will only allow persons with both appropriate credentials and proper authorization to deploy.

22. During his employment with Defendant, Plaintiff was previously deployed. Specifically, on June 22, 2018, Plaintiff was deployed to Highlands County when 33 children and three adults were rushed to the hospital from 4-H camp. Also, Plaintiff was previously activated in April 2017 in relation to a tornado event in the Fort Drum community in Okeechobee county.

23. In October 2018, after Hurricane Michael, Defendant sought volunteers to deploy.

24. Plaintiff's supervisor directed him multiple times to place his name on the volunteer list. Given that Plaintiff was a Group 1 responder, he would have been deployed regardless of whether he volunteered.

25. Although Plaintiff had concerns about his medical condition preventing him from doing certain duties as well as the fact that he was required to undergo weekly treatment, Plaintiff put his name on the list for fear of losing his job.

26. On October 19, 2018, after applying for FMLA leave, Plaintiff sent Ms. Collins an email advising that he believed he was protected by the FMLA and ADA for his various medical conditions.

27. The Emergency Duty guide specifically states, "The FMLA, FSWP, the ADA, and other federal or state laws or statutes may impact mandatory emergency duty requirements."

## COUNT I
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

28. Plaintiff incorporates paragraphs 1 through 27 as if fully stated herein.

29. Plaintiff suffers from Post-Traumatic Stress Disorder ("PTSD"); chronic

fatigue syndrome, fibromyalgia, sleep apnea; osteoarthritis in the hips, knees and degenerative disc disease in his lower back; sarcoidosis in the lungs, bones, glands and spleen; and an anaphylactic reaction to bee venom.

30. The treatment for Sarcoidosis produces side effects experienced by the Plaintiff to include diabetes, high blood pressure, shortness of breath, Tachycardia and immunosuppression.

31. Tiffany Collins was Plaintiff's supervisor and, as such was responsible for approving him to take leave for doctors' appointments. Ms. Collins was also responsible for approving Plaintiff's activity sheets and payroll codes.

32. Between November 3, 2016 and October 24, 2018, regardless of whether they were kept or cancelled, Plaintiff had 96 medical appointments all of them requiring Collins' approval for the respective day off if the appointment occurred during normal working hours.

33. Also, in late 2016 or early 2017, Plaintiff submitted a VA Disability form to Tallahassee per payroll's request. Subsequently, Ms. Collins inquired about the use of a code related to leave for veterans. However, it was already on file that Plaintiff was a veteran as he submitted his certificate of release from active duty indicating he was honorably discharged when he applied for employment.

34. In the Fall of 2017, Tiffany Collins came to Plaintiff and his wife's home and later went to a function together. While they were at Plaintiff's home, his military career and medical conditions were discussed.

35. Accordingly, Defendant, through Collins, was on notice of Plaintiff's disability.

36. On May 18, 2018, Plaintiff was hospitalized and admitted to the Intensive Care Unit after experiencing an anaphylactic reaction.

37. On May 18, 2018, Plaintiff's wife informed Plaintiff's supervisor, Tiffany Collins, via text message of Plaintiff's anaphylactic reaction and consequent hospitalization. Collins responded, stating in part: "Oh my goodness!! Glad he is okay now. Do they know what caused it? I worry about his health – he has so much going on."

38. On July 23, Plaintiff was readmitted to the hospital for an anaphylactic reaction.

39. Plaintiff had complications related to the anaphylactic reaction he experienced on or about May 18, 2018 that required continuous treatment on a weekly basis with his allergist, Dr. Bowen.

40. The ongoing treatment for Plaintiff's disability rendered him unable to deploy for more than five days at a time and overall limited his ability to perform various duties of deployment.

41. After the May 2018 hospitalization, Plaintiff's medical condition was discussed at a management meeting.

42. On July 11, 2018, Plaintiff was issued a cane to assist him with walking which he used on a daily basis from that date until his termination.

43. Plaintiff is a person with disabilities within the meaning of the Americans with Disabilities Act ("ADA").

44. Defendant is an employer and a covered entity under the ADA, subject to its provisions.

45. Plaintiff was qualified to perform the duties of his job with reasonable accommodations regarding his disability.

46. Defendant failed to accommodate Plaintiff by allowing him to either not deploy or deploy for only five days so he could return in sufficient time for his required weekly treatment.

47. On October 24, 2018, Defendant terminated Plaintiff based on his disability.

WHEREFORE, Plaintiff demands damages for lost wages, benefits, front pay and other remuneration; all other compensatory damages allowable under law; emotional distress damages; punitive damages; attorney's fees and costs; and any other relief the Court deems just and proper.

## COUNT II
## VIOLATION OF THE FAMILY MEDICAL LEAVE ACT

48. Plaintiff incorporates paragraphs 1 through 27 as if fully stated herein.

49. On October 18, 2018, Plaintiff's supervisor, Tiffany Collins was not in the office and delegated authority through email to Lison Philor during her absence. Plaintiff discussed his concerns with Ms. Philor who advised him that he should request to take leave under the Family Medical Leave Act ("FMLA").

50. Both Ms. Philor and Plaintiff contacted the Human Resources Director, Katherine Stake, to inquire whether Plaintiff was eligible for FMLA leave.

51. On October 23, 2018, Plaintiff was advised that he was eligible and was given the necessary paperwork to complete, which he did on the same day.

52. On October 23, 2018, Plaintiff's Supervisor, Tiffany Collins, sent the Deputy Secretary for Health, Paul Myers, a Termination Justification Request for Plaintiff.  In this Memo, Ms. Collins alleges that Plaintiff made numerous attempts to avoid or evade deployment.  Also, in the Memo, Ms. Collins acknowledges that Plaintiff had applied for FMLA leave but claimed that he was doing so for the sole purpose of avoiding deployment.  In fact, she stated that there was not any record in his medical personnel file to indicate a disability accommodation was needed.

53. On October 24, 2018, Plaintiff's allergist completed the Certification of Health Care Provider for Employee's Serious Health Condition.

54. In lieu of allowing Plaintiff to take leave under the FMLA, he was terminated from employment.

55. On October 24, 2018, Plaintiff was terminated in violation of the FMLA.

WHEREFORE, Plaintiff demands damages for lost wages, benefits, front pay and other remuneration; all other compensatory damages allowable under law; prejudgment and post judgment interest; attorney's fees and costs; and any other relief the Court deems just and proper.

## **COUNT III-VIOLATION OF TITLE VII**

56. Plaintiff incorporates paragraphs 1 through 27 as if fully stated herein.

57. A female employee, Dacia Garcia, received an official order to deploy for the emergency response to Hurricane Michael. It was apparent from her reaction (crying) that she did not want to deploy.

58. Garcia provided a doctor's note after receiving the official order to deploy, citing an illness as to why she was unable to deploy. Based on that doctor's note, Garcia was permitted to not deploy.

59. Plaintiff provided a Certification of Health Care Provider for Employee's Serious Health Condition and a summary of benefits letter from the Department of Veterans Affairs confirming his service-connected disabilities. Both of these documents indicated Plaintiff's inability to deploy.

60. On October 24, 2018, Plaintiff's employment was terminated for "failure to fulfill job related duties as a Group 1 Emergency Duty responder."

61. Garcia was not disciplined for failing to deploy because she provided a doctor's note indicating an illness.

WHEREFORE, Plaintiff demands damages for lost wages, benefits, back pay and other remuneration; attorney's fees and costs; and any other relief the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated: August 26, 2019                     Respectfully submitted,

*/s/Beth Coke*

Beth Coke
Fla. Bar. #70726
Beth@cokeemploymentlaw.com
Coke Employment Law
131 N. 2nd Street, Suite 204
Fort Pierce, Fl. 34950
Telephone: (772) 252-4230
Facsimile: (772) 252-4575
Attorney for Plaintiff