UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 2:19-CV-14311-ROSENBERG/MAYNARD

BRIAN SELL,

   Plaintiff,

v.

FLORIDA DEPARTMENT OF HEALTH,
OKEECHOBEE COUNTY HEALTH
DEPARTMENT,

   Defendant.
_____/

# ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

THIS CAUSE is before the Court on Defendant Florida Department of Health, Okeechobee County Health Department's 12(b)(1) Motion to Dismiss. The Court has considered the Motion (DE 6), Plaintiff's Response (DE 7), and Defendant's Reply (DE 10), and is fully advised in the premises. For reasons that follow, the Motion is GRANTED IN PART AND DENIED IN PART.

## I.    BACKGROUND[1]

Plaintiff Brian Sell was employed by Defendant Florida Department of Health, Okeechobee County Health Department beginning in 2011 and was eventually promoted to the position of Operations & Management Consultant Manager in September 2016. Plaintiff had an array of duties over the course of his employment, including work on various health-related, philanthropic, and emergency response programs. Among Plaintiff's duties was to deploy in the case of a disaster or emergency situation. Deployment occurs only upon authorization from the Florida Division of Emergency Management, and orders to deploy are issued by the Florida Department of Health's

---

[1] The facts in this part are derived from Plaintiff's Complaint and are accepted as true. DE 1.

Bureau of Preparedness and Response. Plaintiff was deployed twice during his employment: once after a tornado in April 2017, and once after a mass hospitalization in June 2018.

Plaintiff is a U.S. Army veteran identified by the U.S. Department of Veterans Affairs as 80 percent disabled. He suffers from post-traumatic stress disorder, chronic fatigue syndrome, fibromyalgia, sleep apnea, osteoarthritis, degenerative disc disease, sarcoidosis, and a severe allergy to bee venom. The treatment for sarcoidosis produces side effects, including diabetes, high blood pressure, shortness of breath, tachycardia, and immunosuppression. Plaintiff's supervisor, Tiffany Collins, was responsible for approving his leave for numerous medical appointments, and she was on notice of Plaintiff's health issues and his status as a veteran. Plaintiff was hospitalized in May 2018 following an anaphylactic reaction requiring ongoing treatment by Plaintiff's allergist. This treatment prevented Plaintiff from deploying for more than five days at a time and limited his ability to perform his deployment duties.

In October 2018, Collins directed Plaintiff to volunteer for deployment following Hurricane Michael. Deploying upon activation was one of Plaintiff's job duties, so he would have been deployed regardless of whether he volunteered. Plaintiff was concerned about his ability to deploy, believing that his medical condition would prevent him from doing certain work and that deployment would interfere with his weekly medical treatment. Plaintiff nonetheless listed himself as a volunteer for fear of losing his job. On October 19, 2018, Plaintiff applied for leave under the Family and Medical Leave Act on the advice of Lison Philor, who was covering for Collins while she was out of the office. Plaintiff and Philor asked Katherine Stake, Human Resources Director, whether Plaintiff was eligible for FMLA leave, who replied that he was eligible on October 23, 2018.

The same day, Collins sent a Termination Justification Request to Deputy Secretary for Health Paul Myers. Collins argued that Plaintiff had made numerous attempts to avoid deployment,

and that his requested FMLA leave was an attempt to avoid deployment. Collins stated that no record in Plaintiff's file indicated a disability accommodation was needed. On October 24, 2018, Plaintiff's allergist completed the certification required for FMLA leave, but Plaintiff was terminated the same day. Plaintiff further alleges that a female employee, Dacia Garcia, was excused from deployment after providing a doctor's note.

Plaintiff seeks damages under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* ("ADA"); the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq.* ("FMLA"); and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* Defendant moves to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(1), arguing that the Court lacks subject-matter jurisdiction because the claims are barred by the Eleventh Amendment.

## II. LEGAL STANDARD

Eleventh Amendment immunity "is in the nature of a jurisdictional bar" that "should be decided at an early stage." *Ross v. Jefferson Cty. Dep't. of Health*, 701 F.3d 655, 659 (11th Cir. 2012) (quoting *Bouchard Transp. Co. v. Fla. Dep't. of Envtl. Prot.*, 91 F.3d 1445, 1448 (11th Cir. 1996)) (internal quotation marks omitted). In ruling on a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction, courts may consider matters outside the pleadings without converting the motion into one for summary judgment. *See* Fed. R. Civ. P. 12(d). Motions under Rule 12(b)(1) can be categorized as either "facial attacks" or "factual attacks." *Garcia v. Copenhaver, Bell & Assoc., M.D.'s, P.A.*, 104 F.3d 1256, 1260 (11th Cir. 1997) (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)). A facial attack is an assertion that the complaint fails to allege a basis for subject-matter jurisdiction, which the court resolves by looking to the complaint alone. *Id.* at 1260. A factual attack disputes "the existence of subject matter jurisdiction in fact, irrespective of the pleadings." *Id.* (quoting *Lawrence*, 919 F.2d at 1529). "If the facts necessary to

sustain jurisdiction do not implicate the merits of plaintiff's cause of action, then . . . 'the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.'" *Id.* (quoting *Lawrence*, 919 F.2d at 1529).

## III. DISCUSSION

"The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court." *Bd. of Tr. Of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001). "The Eleventh Amendment protects the immunity of not only the states, but of state agencies and entities that function as an 'arm of the state.'" *Ross v. Jefferson Cty. Dep't. of Health*, 701 F.3d 655, 659 (11th Cir. 2012) (citing *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003) (en banc)). Four factors are relevant to determining whether an entity acts as an arm of the state in performing a given function: "(1) how state law defines the entity; (2) what degree of control the State maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity." *Id.* at 660 (quoting *Manders*, 338 F.3d at 1309). In weighing these factors, the most important consideration is how state courts treat the entity. *Id.* at 659. Finally, Congress may abrogate states' Eleventh Amendment immunity, but only if it does so "unequivocally" and "pursuant to a valid grant of constitutional authority." *Garrett*, 531 U.S. at 363 (quoting *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73 (2000)) (internal quotation marks omitted).

a. **ADA**

Plaintiff does not argue that the State of Florida has waived Eleventh Amendment immunity with respect to any of his claims. *See* Fla. Stat. § 768.28(18) (stating that no statute shall be construed to be a waiver of Eleventh Amendment immunity "unless such waiver is explicitly and definitely stated to be a waiver of the immunity of the state and its agencies from suit in federal court"). Further, Congress did not validly abrogate Eleventh Amendment immunity with respect to

4

Plaintiff's claim under the ADA's employment provisions. *Ross*, 701 F.3d at 659 (citing *Garrett*, 531 U.S. at 374). Accordingly, Plaintiff's ADA claim must be dismissed if Defendant is an arm of the state. The parties have not identified any cases from Florida courts specifically stating whether county health departments are considered state agencies. Although authority appears to be sparse, Florida's Fourth District Court of Appeals has described a county health department as "a subdivision of the State of Florida, Department of Health." *Goodman v. Martin County Health Dep't*, 786 So. 2d 661, 663 n.1 (Fla. Dist. Ct. App. 2001). Proceeding to the four-part inquiry, the Court concludes that Defendant is an arm of the state.

    *i.    State law defines Defendant as a state agency for personnel purposes.*

First, state law defines the county health departments as agencies of the State of Florida. The organic statute for the Florida Department of Health provides that the Department "shall plan and administer its public health programs through ***its county health departments***." Fla. Stat. § 20.43(5) (emphasis added). Further, the director and administrator of each county health department "shall be appointed by the State Surgeon General after the concurrence of the boards of county commissioners of the respective counties." Fla. Stat. § 154.04(1)(b). And most importantly for present purposes, Florida law provides:

> The personnel of the county health department **shall be employed by the Department of Health**. The compensation of such personnel shall be determined under the rules of the Department of Management Services. Such employees shall engage in the prevention of disease and the promotion of health under the supervision of the Department of Health.

§ 154.04(2) (emphasis added). This statutory scheme compels the conclusion that state law defines county health departments as state entities. Plaintiff makes two arguments in response. First, he correctly notes that the operations of county health departments are also governed by contractual arrangements between the Florida Department of Health and county boards of commissioners. *See* Fla. Stat. §154.001 ("[T]he Legislature intends that the public health needs of

5

the several counties be provided through contractual arrangements between the state and each county."); § 154.01(3) ("The Department of Health shall enter into contracts with the several counties for the purposes of this part. All contracts shall be negotiated and approved by the appropriate local governing bodies on behalf of the department."). However, Defendant submitted in its briefing the contract[2] between the Department of Health and the Okeechobee County Board of County Commissioners in effect at the time of Plaintiff's termination. It echoes section 154.04(2), providing that the "CHD and its personnel shall follow all State policies and procedures" and that "[a]ll CHD employees shall be State or State-contract personnel subject to State personnel rules and procedures." *Id.* at 3.

Second, Plaintiff cites two Florida Attorney General opinions for the proposition that county health departments are not state entities. The first opinion, issued in 1985, concluded that county health departments are public agencies and therefore subject to public-records laws, describing them in passing as "agenc[ies] of county government." Op. Att'y Gen. Fla. 85-79 (1985). The opinion did not discuss in depth the division of authority between the state and counties with respect to county health departments.

The second opinion, issued in 2000, concluded that county health departments are agencies of the counties rather than the state in the context of tax levies pursuant to section 154.02. Op. Att'y Gen. Fla. 2000-19. Under Florida law, counties are authorized to impose a tax to contribute to the County Health Department Trust Fund. Fla. Stat. § 154.02(2). The Attorney General concluded that such a tax would count toward the statutory and state constitutional maximum tax that counties could impose on real property and tangible personal property. The opinion also cited, in addition to

---

[2] The Court considers the contract because the Defendant's Motion is a factual rather than facial attack on subject-matter jurisdiction; both parties have presented facts outside the Complaint. DE 7-1; DE 10-1, 10-2, 10-3, 10-4. Whether Defendant is an arm of the State of Florida does not implicate an element of Plaintiff's causes of action; rather, it implicates this Court's ability to decide the case. Accordingly, this Court may "weigh the evidence and satisfy itself as to the existence" of subject-matter jurisdiction. *Garcia*, 104 F.3d at 1260 (quoting *Lawrence*, 919 F.2d at 1529).

the 1985 opinion discussed above, opinions from 1974 and 1966. Op. Att'y Gen. Fla. 2000-19 n.11. The 1974 opinion concluded that county health departments are county agencies and therefore the Florida Department of General Services was not required to approve their facilities leases. Op. Att'y Gen. Fla. 74-381 (1974). The 1966 opinion concluded that funds raised for the county health departments through county taxation are county funds, even though they are deposited with the state treasurer. Op. Att'y Gen. Fla. 66-84 (1966).

These opinions are inapposite because none of them speak to the "function" at issue here: personnel decisions. In *Ross v. Jefferson County Department of Health*, the Eleventh Circuit considered a similar case in which an employee who was terminated from the Jefferson County Department of Health in Alabama sued under the ADA and Title VII. 701 F.3d 655. Holding that the county health department was an arm of the State of Alabama, the Court stated: "Because Ross sued about her allegedly wrongful termination, the 'function' at issue is the termination of employees, and state law establishes that the state controls that function." *Id.* at 660. Even a precisely on-point opinion of the Attorney General would not be dispositive of the arm-of-the-state inquiry, because it is to state ***courts*** that deference is principally owed. *Id.* at 559. And where, as here, the cited opinions do not address the function at issue in this case—terminating employees—they do not disturb the conclusion that state law defines county health departments as arms of the state for personnel purposes.

  ii.  *The state decides whether to terminate Defendant's personnel.*

The State of Florida controls the decision whether to terminate Defendant's personnel, who by statute are "employed by the Department of Health." § 154.04(1)(b). Plaintiff's own Complaint acknowledges that, prior to terminating him, his supervisor sent a "Termination Justification Request" to Deputy Secretary Paul Myers in the Florida Department of Health. DE 1 ¶ 52. The need to submit a request to terminate an employee evidences the state's control over the decision.

7

In response, Plaintiff cites a case denying Eleventh Amendment immunity for The Public Health Trust of Miami-Dade County, but the Health Trust is not equivalent to a county health department. The Health Trust is managed by a board of trustees appointed by the county, and "the state itself maintains no degree of control over the Health Trust's employment related functions." *Singleton v. Pub. Health Tr. of Miami-Dade Cty.*, 203 F. Supp. 3d 1181, 1188 (S.D. Fla. 2016).

    *iii.    Most of Defendant's funding comes from the State of Florida.*

The State of Florida is responsible for most of Defendant's funding for the relevant period. The 2018–19 contract between Okeechobee County and the Department of Health provides:

> The State's appropriated responsibility . . . is an amount not to exceed $1,674,223.00. . . . The State's obligation to pay under this contract is contingent upon an annual appropriation by the Legislature.
>
> The County's appropriated responsibility . . . is an amount not to exceed $210,000.00.

DE 10-3, at 2. Defendant also submitted the Okeechobee County Health Department Spending Plan for Fiscal Year 2018–19.[3] DE 10-4. The plan indicates that local contributions account for $157,500 out of a $2,104,443 budget, or approximately 7.5 percent. State contributions account for $1,520,336, or 72.2 percent of the budget.[4] The remaining revenue consists of various federal funds, fees, and miscellaneous sources. That the State of Florida is responsible for the lion's share of funding weighs in favor of determining that Defendant an arm of the state.

    *iv.    A judgment against Defendant would be paid from Florida's Risk Management Trust Fund.*

Florida maintains a State Risk Management Trust Fund, under which the state generally insures "all departments of the State of Florida and their employees, agents, and volunteers." Fla. Stat. § 284.31. *See also* Fla. Stat. § 284.385 ("All departments covered by the State Risk

---

[3] The Court considers the plan for the reasons discussed *supra* note 2.
[4] Plaintiff submitted an excerpt from Okeechobee County's proposed 2018–19 budget. DE 7-1. It indicates a proposed appropriation of $243,169 for Defendant, but the document does not include the amount of any funding from other sources.

Management Trust Fund under this part shall immediately report all known or potential claims to the Department of Financial Services for handling. . . . The payment of a settlement or judgment for any claim covered and reported under this part shall be made only from the State Risk Management Trust Fund."). Defendant represents that it is covered by this provision, which is supported by case law. DE 10, at 9. In *Goodman v. Martin County Health Department*, the prevailing plaintiff in a suit against Martin County Health Department sought attorney's fees from the State of Florida. 786 So. 2d 661 (Fla. Dist. Ct. App. 2001). The fees were denied because the plaintiff failed to comply with a statutory provision governing the State Risk Management Trust Fund, requiring service of the pleadings on the Florida Department of Financial Services. *Id.* at 663.

Each of the four factors discussed indicates that Defendant is an arm of the state and immune from Plaintiff's ADA claim under the Eleventh Amendment. Accordingly, this claim is DISMISSED WITH PREJUDICE.

b. **FMLA**

Plaintiff acknowledges that Congress did not validly abrogate Eleventh Amendment immunity as it relates to his self-care FMLA claim. *Coleman v. Ct. of Appeals of Md.*, 556 U.S. 30, 43–44 (2012). Because Defendant is an arm of the State of Florida, Plaintiff's FMLA claim must also be DISMISSED WITH PREJUDICE.

c. **Title VII**

Unlike the other claims in the Complaint, Congress validly abrogated Eleventh Amendment immunity in enacting the employment-discrimination provisions of Title VII. *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976). Therefore, the Eleventh Amendment is no obstacle to Plaintiff's Title VII claim. Because Defendant has not moved to dismiss this claim on any basis other than Eleventh Amendment immunity, this claim survives.

## IV. CONCLUSION

It is **ORDERED AND ADJUDGED**:

1. Defendant's Motion to Dismiss [DE 6] is **GRANTED IN PART AND DENIED IN PART**.

2. Count I and Count II of the Complaint [DE 1] are **DISMISSED WITH PREJUDICE.**

3. Defendant shall file an answer on or before **December 3, 2019**.

**DONE AND ORDERED** in Chambers in West Palm Beach, Florida, this 22nd day of November, 2019.

ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

Copies furnished to: All counsel of record via CM/ECF