UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 2:19-CV-14311-ROSENBERG/MAYNARD

BRIAN SELL,

    Plaintiff,

v.

FLORIDA DEPARTMENT OF HEALTH,
OKEECHOBEE COUNTY HEALTH
DEPARTMENT,

    Defendant.

_____/

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**THIS CAUSE** is before the Court on Defendant Florida Department of Health, Okeechobee County Health Department's Motion for Summary Judgment ("Motion") [DE 31] and accompanying Statement of Material Facts [DE 35]. Plaintiff Brian Sell filed a Response [DE 41] and a Responsive Statement of Material Facts [DE 42]. Defendant filed a Reply [DE 45] and a Reply Statement of Material Facts [DE 46]. After consideration of these materials and the record, and being fully advised in the premises, the Motion is **GRANTED**.

**I.  BACKGROUND**

**A.  Undisputed Facts**

One function of the Florida Department of Health is to "[m]aintain and coordinate preparedness for and responses to public health emergencies in the state." Fla. Stat. § 20.43(1)(d). To that end, the Department maintains a protocol for deploying staff to alternate work locations in the event of a public health emergency. Pursuant to Internal Operating Procedure 310-2-18 of the Department of Health's Bureau of Preparedness and Response, staff may be designated as Emergency Duty Group 1 ("EDG1") or Emergency Duty Group 2 ("EDG2"). "EDG1 responders

1

are persons determined to be a deployable resource, able to deploy out of their county of employment or out of state," and they are "required to report for emergency duty when called." DE 30-1 at 9–10. EDG2 responders only "have emergency duty responsibilities within their county of employment," however a designee of the State Surgeon General "may elevate staff designated as EDG2 to EDG1, on a case-by-case basis, if necessary, to support the needs of the incident." *Id.* Further, "[i]f a health care practitioner certifies that the employee has a FMLA [sic] and/or FSWP qualifying condition that precludes them from performing emergency duty, the employee cannot be disciplined for failure to report for or perform emergency duty, if the failure is a result of the serious health condition." *Id.* at 7–8. To request a medical exemption from emergency duty, staff must complete a Department of Health form and resubmit it annually. *Id.* at 8.

Plaintiff Brian Sell was employed in the Okeechobee County Health Department as an Operations & Management Consultant Manager and was classified as an EDG1 responder. DE 35 at 2–3 ¶ 4. He was also part of the Select Exempt Service (SES), which consists of at-will employees of the Florida government. DE 35 at 3 ¶ 5. As Hurricane Michael approached the Florida Panhandle on October 9, 2018, Tiffany Collins, Administrator of the Okeechobee County Health Department, sent an email listing certain individuals able to deploy as needed in response to the storm. DE 35 at 4 ¶ 14. She listed herself, Plaintiff, and another individual as EDG1 responders. *Id.* A Department of Health official responded to her designations, stating:

> We are just fostering volunteers. I would think that if the parameters of the mission are met in terms of medical and non-medical, they would consider rostering the entire team.
>
> I will add these names to the volunteer listing (for consideration). State ESF8 Staffing will review the volunteers and provide deployment orders if they find the skill set that matches the request.

DE 35 at 5 ¶ 15. Plaintiff was copied on this email and replied to Collins: "I have too much crap going on. So if they are asking for volunteers. I have not." DE 35 at 5 ¶ 16. Collins then discussed with Plaintiff why he could not deploy; according to Collins, Plaintiff cited only his wife and deadlines at work. DE 42 at 4 ¶ 28. However, he had previously communicated to Collins that he had a number of medical conditions, including sarcoidosis, high blood pressure, hip problems, and an allergy to bee stings. DE 42 at 3 ¶ 19.

On October 13, 2020, at Collins's request, Plaintiff stated that he could deploy for a period of three to five days. DE 42 at 3 ¶ 25. On October 18, 2018, a Department of Health official emailed Plaintiff and another employee:

> Liberty County is seeking a Planner to assist their CHD. Can either of you assist?
>
> You will have to travel on Saturday, October 20, 2018 to get a briefing and report for duty on Sunday, October 21, 2018. You will be deployed for 7 days.

DE 42 at 4 ¶ 31. Plaintiff responded: "I cannot." DE 42 at 4 ¶ 32. After seeing this response, Collins called Plaintiff and stated that there would be consequences if he refused to deploy. DE 42 at 5 ¶ 34. The next day, Plaintiff emailed Collins and others, stating that he had started a Family and Medical Leave Act ("FMLA") claim as of the day before on the basis of his medical conditions. DE 42 at 5 ¶ 39. On October 24, 2018, Plaintiff submitted a Certification of Health Care Provider for Employee's Serious Health Condition in support of his claim for leave under the FMLA based on Plaintiff's need to receive a weekly allergy shot.[1] DE 42 at 5–6 ¶¶ 41–42.

The same day, Collins sought authorization from her supervisor to terminate Plaintiff for "failure to fulfill job related duties as a Group 1 Emergency Duty responder," noting that he had filed for FMLA only after learning of his imminent deployment and that he was not then receiving

---

[1] Plaintiff states that this weekly allergy shot was the reason he could not deploy for more than five days, which Defendant disputes. DE 42 at 3 ¶ 23; DE 46 at 2 ¶ 23.

any disability-related accommodation. DE 30-2. After she received approval to do so, Collins terminated Plaintiff later that day. DE 42 at 6 ¶ 43.

Along with Collins's October 9 designation of EDG1 responders was a list of EDG2 volunteers "to elevate to Group 1," which included Dacia Garcia, a registered nurse. DE 35 at 3 ¶¶ 12–13. Garcia had volunteered to deploy and received an order to deploy. DE 42 at 7 ¶¶ 51–53. EDG2 responders who have volunteered to deploy cannot remove themselves from deployment without following proper protocols. DE 42 at 7 ¶ 54. Garcia verbally told Collins that she was too ill to deploy and submitted a doctor's note excusing her from work that day. DE 42 at 7 ¶ 55. Garcia was ultimately not required to deploy and did not receive any discipline. DE 42 at 7 ¶ 57.

**B.    Procedural History**

Plaintiff filed his Complaint on August 26, 2019, alleging that his termination violated the FMLA; the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* ("ADA"); and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* The ADA and FMLA counts were subsequently dismissed on the basis of Eleventh Amendment immunity. DE 14. Accordingly, the sole claim at issue in the instant Motion is sex-based discrimination under Title VII.

## II.    LEGAL STANDARD

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The existence of a factual dispute is not by itself sufficient grounds to defeat a motion for summary judgment; rather, "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A dispute is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of*

4

*Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (citing *Anderson*, 477 U.S. at 247–48). A fact is material if "it would affect the outcome of the suit under the governing law." *Id.* (citing *Anderson*, 477 U.S. at 247-48).

In deciding a summary judgment motion, the Court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006). The Court does not weigh conflicting evidence. *See Skop v. City of Atlanta*, 485 F.3d 1130, 1140 (11th Cir. 2007). Thus, upon discovering a genuine dispute of material fact, the Court must deny summary judgment. *Id.*

The moving party bears the initial burden of showing the absence of a genuine dispute of material fact. *See Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). Once the moving party satisfies this burden, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs., LLC*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, "[t]he non-moving party must make a sufficient showing on each essential element of the case for which he has the burden of proof." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Accordingly, the non-moving party must produce evidence, going beyond the pleadings, to show that a reasonable jury could find in favor of that party. *See Shiver*, 549 F.3d at 1343.

### III.   ANALYSIS

Title VII makes it unlawful "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2. One way a Title VII claim can withstand summary judgment is by satisfying the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under

*McDonnell Douglas*, the plaintiff must first establish a prima facie case of discrimination consisting of the following elements: (1) the plaintiff was a member of a protected class, (2) he was qualified to do the job, (3) he was subjected to an adverse employment action, and (4) similarly situated employees outside of the protected class were treated differently. *See Lewis v. City of Union City*, 918 F.3d 1213, 1220–21 (11th Cir. 2019) (en banc). If the plaintiff establishes a prima facie case, "the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions." *Id.* at 1221. If the employer does so, the burden returns to the plaintiff to "demonstrate that the defendant's proffered reason was merely a pretext for unlawful discrimination." *Id.*

Here, Defendant argues that Plaintiff has not established a prima facie case of sex-based discrimination because he has not identified an appropriate comparator—that is, a similarly situated female employee. A comparator must be "similarly situated in all material respects." *Id.* at 1226. This analysis turns "not on formal labels, but rather on substantive likeness." *Id.* at 1228. Relevant factors include, but are not limited to, whether the individual (i) engaged in the same basic conduct as the plaintiff; (ii) was subject to the same employment policy, guideline, or rule as the plaintiff; (iii) was under the jurisdiction of the same supervisor as the plaintiff; and (iv) shared the plaintiff's employment or disciplinary history. *Id.* at 1227–28.

Plaintiff's proffered comparator is Dacia Garcia, a registered nurse classified as EDG2 who volunteered to deploy out of county to assist with Hurricane Michael recovery efforts. After Garcia volunteered, Collins listed her on the roster for potential deployment and Garcia received an order to deploy from the Department of Health staffing unit. When she fell ill and submitted a doctor's note, she was permitted not to deploy out of county. Defendant argues that Garcia's EDG2 status makes her an inappropriate comparator. As an EDG1 responder, Plaintiff was under a duty to deploy out of county, while Garcia was under a duty to deploy only within her own county—

6

deploying out of county was voluntary. Plaintiff responds with two assertions. First, because Collins's October 9 email listed Garcia as "Group 2 to elevate to Group 1," Garcia effectively became an EDG1 employee. Second, regardless of whether they were part of the same duty group, Plaintiff and Garcia were under the same obligation to complete a formal request for exemption from emergency duty. For the reasons that follow, these assertions are unavailing.

Guided by the factors identified in *Lewis*, the Court concludes that Garcia is not similarly situated to Plaintiff. First, they did not engage in the same basic conduct. Plaintiff was instructed by Collins to roster for deployment as an EDG1 responder; Garcia never received such an instruction from a supervisor—rather, she volunteered to deploy out of county and subsequently sought to be excused from the deployment. Second, and more importantly, they were not subject to the same policy: Plaintiff was an EDG1 responder while Garcia was an EDG2 responder. It is undisputed that as an EDG2 responder, Garcia's only duty under the Department of Health's IOP was to deploy within her own county. *See* DE 30-1 at 10 ("Staff designated as EDG2 have emergency duty responsibilities within their county of employment."). Plaintiff argues that Collins's email listing Garcia as "Group 2 to elevate to Group 1" means that she became an EDG1 responder. Viewed in the light most favorable to Plaintiff,[2] this language means only that Garcia was elevated to EDG1 status for the limited purpose of deploying out of county in response to Hurricane Michael, and that fact appears to be undisputed. DE 42 at 7 ¶ 50; DE 46 at 5 ¶ 50.

This does not make Plaintiff and Garcia similarly situated. *See Lewis*, 918 F.3d at 1228 ("[A] valid comparison will turn not on formal labels, but rather on substantive likenesses. . . . [C]omparators must be sufficiently similar, in an objective sense, that they 'cannot reasonably be distinguished.'" (quoting *Young v. United Parcel Serv., Inc.*, 135 S. Ct. 1338, 1355 (2015)). That

---

[2] If Plaintiff were to argue that Garcia became an EDG1 responder for all purposes, that would be inconsistent with Plaintiff's admission in his Statement of Material Facts that Garcia was an EDG2 responder. DE 35 at 3 ¶ 13; DE 42 at 2 ¶ 13.

Garcia was labeled EDG1 after volunteering to deploy does not mean that she "cannot reasonably be distinguished" from Plaintiff, for whom out-of-county deployment was an expected responsibility of his position. *Young*, 135 S. Ct. at 1355. Plaintiff asks the Court to compare apples and oranges—an employee whose position required him to deploy out of county, and an employee who gratuitously offered to deploy out of county. It is intuitive that an employee who could have simply refrained from volunteering in the first instance would be more readily excused from deploying.

As such, whether the correct protocol was followed in removing Garcia from the deployment order is of no moment. Even if, as Plaintiff suggests, Garcia should have been required submit an emergency duty exemption request rather than verbally informing Collins and submitting a doctor's note, that goes to the issue of whether Plaintiff and Garcia were treated differently, not whether they were similarly situated. "An employer is well within its rights to accord different treatment to employees who are differently situated in "material respects"—*e.g.*, who engaged in different conduct, who were subject to different policies, or who have different work histories." *Lewis*, 918 F.3d at 1228.

Taking the third and fourth factors of *Lewis* together, Plaintiff's immediate supervisor was Collins, and Garcia's was Vickie Elkins.[3] DE 42-1 at 75:8. This factor is arguably indeterminate in light of another distinction between Plaintiff and Garcia: Plaintiff was an at-will employee while Garcia was a career-service employee and benefited from the various statutory protections of Florida's Career Service System.[4] *See* Fla. Stat. § 110.201 *et seq.* Accordingly, Plaintiff and Garcia would have been subject to different forms of discipline regardless of the responsible supervisor.

---

[3] Although Defendant cited this fact in its Motion, it failed to include it in its Statement of Material Facts supported by pinpoint citations to the record. The Court expects a higher standard of compliance with Local Rule 56.1.

[4] See discussion *supra* note 3.

Plaintiff and Garcia are not similarly situated in all material respects, and therefore Plaintiff has failed to establish a prima facie case of sex-based discrimination under *McDonnell Douglas*.[5] Because Plaintiff otherwise offers no direct or circumstantial evidence sufficient to permit a jury to find that he was discriminated against on the basis of his sex, Defendant is entitled to summary judgment.

## IV. CONCLUSION

Based on the foregoing, it is hereby **ORDERED AND ADJUDGED**:

1. Defendant's Motion for Summary Judgment [DE 31] is **GRANTED**.

2. The Clerk of the Court is instructed to **CLOSE THIS CASE**. All pending motions are **DENIED AS MOOT** and all deadlines are terminated.

3. Defendant shall promptly submit a proposed Final Judgment via email to rosenberg@flsd.uscourts.gov, which shall state whether Plaintiff has any objection to the language of the proposed judgment.

**DONE AND ORDERED** in Chambers, West Palm Beach, Florida, this 11th day of June, 2020.

Copies furnished to:  
Counsel of record

ROBIN L. ROSENBERG  
UNITED STATES DISTRICT JUDGE

---

[5] The Court need not reach Defendant's arguments regarding step two of *McDonnell Douglas*.